

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

JS:MKB:CHB                          *271 Cadman Plaza East*
F.#2007R00985                       *Brooklyn, New York 11201*

March 26, 2008

By ECF

The Honorable Joan M. Azrack
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

            Re:   United States v. Kenneth Eng,
                  Criminal Docket No. 08-66 (FB)

Dear Judge Azrack:

        The government submits this response to the defendant's letter dated March 20, 2008 (received by the government on March 24) and in further support of its February 14, 2008 letter requesting that the Court recommend that Judge Block accept the defendant's guilty plea to making a threatening interstate communication in violation of 18 U.S.C. § 875(c).

        As noted in the government's February 14 letter, the defendant expressly allocuted to making a threatening phone call in March of 2005 to an individual with the specific intent to scare that individual into thinking that the defendant was going to injure him. See Feb. 7, 2008 Tr. at 17. In doing so, the defendant referenced a series of past exchanges with that individual in which the defendant assaulted the individual and threatened increased violence, exchanges which left that individual fearing for his personal safety. See id. at 17-19; Feb. 14, 2008 Letter at 3-5. Upon receiving the communication, the individual immediately terminated the call and again perceived that the defendant intended to injure him. See Feb. 14, 2008 Letter at 3.

        In his March 20 letter, the defendant does not:

    (1)  dispute the fact that he intentionally placed an
         interstate communication directly to its intended
         recipient in order to make that individual fear that
         the defendant was going to injure him; see Virginia v.
         Black, 538 U.S. 343, 359-60 (2003) (noting that "a

2

prohibition on true threats protects individuals from the fear of violence and from the disruption that fear engenders" and that "true threats" are those in which "a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death");

(2)   dispute that evidence related to the context and circumstances surrounding the defendant's phone call is critical in evaluating whether that communication constitutes a threat; see Letter at 1-2; see, e.g., Watts v. United States, 394 U.S. 705, 705-708 (1969); or

(3)   contend that his phone call constituted protected First Amendment speech, and thereby properly invoke the Second Circuit's jurisprudence derived from United States v. Kelner related to whether such a communication is still punishable as a crime because it "so unequivocal, unconditional, immediate and specific as to the person threatened, as to convey a gravity of purpose and imminent prospect of execution."  New York v. Operation Rescue National, 273 F.3d 184, 196 (2d Cir. 2001) (citations omitted).[1]

---

[1]   The defendant nevertheless relies on the language from Kelner throughout his submission and suggests that, to constitute a threat punishable under 18 U.S.C. § 875(c), "[a] reasonable person would have to find the threat 'unequivocal, unconditional, immediate and specific.'"  Letter at 2 (citing Feb. 7., 2008 Tr. at 23).  The defendant's articulation of the standard under 18 U.S.C. § 875(c) is patently incorrect.  As stated in detail in the government's February 14, 2008 letter, the Second Circuit has clearly held that:

under Section 875(c), the government need prove only that [(1)]the defendant intentionally transmitted a communication in interstate commerce and [(2)] that the circumstances were such that an ordinary, reasonable recipient familiar with the context of the communication would interpret it as a threat of injury.

United States v. Francis, 164 F.3d 120, 123 (2d Cir. 1999) (citations omitted).

3

Instead, the defendant contends in his March 20 letter that his communication is "unambiguous" and "not susceptible to being interpreted as threatening" because the communication was "retrospective" and merely referenced the defendant's prior assault on its recipient.  Letter at 1-2.  The defendant further suggests that his victim's perceived fear of injury as a result of the call is irrelevant and instead "reflects on the self-absorption of the victim."  Id. at 2.

The government respectfully submits that the Second Circuit has already considered and rejected the defendant's arguments in United States v. Malik, a case upon which the defendant incorrectly relies.  16 F.3d 45 (2d Cir. 1994); see Letter at 2.  In Malik, the Second Circuit stated that "an absence of explicitly threatening language" did not prevent the finding of a threat because the "test is an objective one-namely, whether an ordinary, reasonable recipient who is familiar with the context of the [communication] would interpret it as a threat of injury."  Id. at 49 (quotation omitted).  Indeed, the Second Circuit noted:

> [R]igid adherence to the literal meaning of a communication without regard to its reasonable connotations derived from its ambience would render the statute powerless against the ingenuity of threateners who can instill in the victim's mind as clear an apprehension of impending injury by an implied menace as by a literal threat.

Id. at 50.

Here, the defendant asks the Court to rigidly adhere to the words of his communication alone.  But the defendant openly admitted to employing just such an "implied menace" when he deliberately communicated a threat of injury to his victim by invoking a prior incident in which he previously assaulted the individual and advocated violence against others – like the victim here – who were not members of the defendant's racial group.  The import of the communication could not be more clear based on the defendant's stated intent, his tone, and the circumstances surrounding the words themselves: the defendant intended to make his intended recipient believe that the defendant was going to finish what he previously started and physically injure the intended recipient of the call.

Moreover, the defendant's victim believed just that – that the defendant was communicating a threat to injure him – and the Second Circuit in Malik made clear that "proof of the effect of the alleged threat upon the [communication's recipient] is

4

highly relevant" in determining whether a given communication constitutes a threat. Id. at 49; see United States v. Davilla, 461 F.3d 298, 305 (2d Cir. 2006); see also United States v. Saunders, 166 F.3d 907, 913-14 (7th Cir. 1999). Indeed, the court in Malik referred to "the recipients' states of mind and their reactions" as the "most significant" evidence in removing any ambiguity and "shedding light" on the full context of an alleged threat. 16 F.3d at 49. The logic behind such an analysis is well-founded: it is the recipient of the communication who will be most familiar with, among other things, the facts and circumstances surrounding the communication and the speaker's tone. See, e.g., Watts v. United States, 394 U.S. 705, 705-708 (1969).[2] It is palpably incredible that the defendant would seek to denigrate his vicitm's reaction when, by his own allocution, the defendant specifically intended to have such an effect on the person he called. That the defendant's victim perceived the communication as a threat of injury constitutes the most critical evidence that "the circumstances were such that an ordinary, reasonable recipient familiar with the context of the communication" would – and indeed did – interpret the call as a threat of injury. Francis, 164 F.3d at 123.

Finally, on February 7 the defendant expressly allocuted to intentionally making a threatening interstate communication in March 2005. See Tr. at 17-19. As a rule, whether a given communication constitutes a threat of injury is an issue of fact to be decided by a jury. See, e.g., Malik, 16 F.3d at 49; see also United States v. Davilla, 461 F.3d 298, 304-305 (2d Cir. 2006); United States v. Francis, 164 F.3d 120, 123 n.4 (2d Cir. 1999). The defendant should not be permitted to seek a judicial determination of this issue based on his allocution alone and where the government has not been able to offer witnesses and present other evidence in support of the facts proffered in its February 14, 2008 letter.

---

[2] Ironically, it was the presence of such contextual evidence related to the recipients' reactions to the communication in Malik that helped to distinguish the case from United States v. Barcley, 452 F.2d 930, 932 (8th Cir. 1971), another case upon which the defendant relies. See Letter at 2-3. The Court in Barcley further concluded that the defendant's communication was better viewed as protected, First Amendment speech – a claim wholly absent from the present case. See id. at 933-34.

5

      For the reasons stated above and in the government's February 14 letter, the government respectfully submits that the Court should accept the defendant's guilty plea.

      Respectfully submitted,

      Benton J. Campbell
      United States Attorney

By:   _____
      Carter H. Burwell
      Assistant United States Attorney
      (718) 254-6313

cc:  Joel Dranove, Esq. (via ECF)