



**U.S. Department of Justice**


*United States Attorney*
*Eastern District of New York*

MLM:CHB
F.#2007R00985

*271 Cadman Plaza East*
*Brooklyn, New York 11201*


July 23, 2008

By Hand-Delivery & ECF

The Honorable Frederic Block
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Kenneth Eng
Criminal Docket No. 08-66 (FB)

Dear Judge Block:

On June 4, 2008, the defendant Kenneth Eng pleaded guilty, pursuant to an agreement with the government, to a single-count, superseding misdemeanor information. That information charges the defendant with interfering with another individual's participation in a federally protected activity. See 18 U.S.C. § 245(b). The government respectfully submits this letter in advance of the defendant's sentencing, which is scheduled for July 25, 2008, and in response to the Presentence Investigation Report ("PSR") and a letter from the defendant dated July 21, 2008.

In light of the defendant's ongoing mental health treatment and in order to best manage the dramatic risks associated with the defendant's mental health problems and his prior misconduct, the government respectfully requests that the Court sentence the defendant to a five-year term of probation.

## I. Background

### A. The Defendant and His History of Mental Health Issues

The defendant is a 25-year-old Asian-American and self-proclaimed racist who has a history of mental health problems. See PSR at ¶¶ 3, 41-56. The defendant came to the attention of federal law enforcement officials after he celebrated the massacre of innocent men and women at Virginia Tech and stated that he himself had intended to commit similar acts when he was a student at New York University (NYU). Specifically, in April

2007 the Federal Bureau of Investigation learned that the defendant had circulated a book proposal in which he praised Seung Hui Cho, an Asian-American who brutally massacred 32 white and black students and professors at Virginia Tech. Id. at ¶ 2. Additional investigation revealed that, immediately following the shooting at Virginia Tech, the defendant posted a video on the internet in which he exalted in the deaths of whites and blacks. Id. at ¶ 5. The defendant also gave an interview to a local newspaper in which he stated that he "was planning on going to New York University and going on a rampage . . . The only thing that stopped me was that I couldn't afford a gun." Id. at ¶ 6.

Shortly thereafter, federal law enforcement officials discovered that, when the defendant was a student at NYU from 2002 to 2005, he had been involved in numerous incidents with members of the NYU community and repeatedly threatened and displayed aggressive and hostile behavior to students, professors, and administrators. See id. at ¶ 29. Among other things, the defendant made numerous threatening telephone calls and sent threatening emails to various members of the NYU community. Id. Although the defendant had terrified members of the NYU community, the defendant's conduct had not resulted in any significant prosecutions by the local authorities. See id. at ¶ 28-29. Indeed, the government is informed that, although two separate state prosecutions enabled individuals to obtain orders of protection against the defendant, the prosecutions were disposed of via adjournments in contemplation of dismissal ("ACDs") because the defendant did not violate the terms of those orders of protection. Cf. PSR at ¶ 29.

In May 2007, while the federal investigation was ongoing, law enforcement officials learned that the defendant had recently threatened a neighbor with a hammer. See PSR at ¶ 31. The defendant was arrested by local authorities and spent approximately three months in custody in Rikers Island. Although that prosecution is still pending, the case has been transferred to a pre-trial diversionary program in which the defendant is receiving mental health treatment. See PSR at ¶ 32. The government is informed that the defendant has responded positively to the mental health treatment, but his mental health providers believe that continued treatment and monitoring are vital to maintain the defendant's improved mental health condition. The government is also informed that the pre-trial diversionary program is currently set to renew for a six-month period in August 2008, but that the program could be terminated at that time or in the future. If the defendant continues to participate in the program, the defendant's case will be dismissed after the program is terminated.

B. The Instant Offense

In August 2007, after the defendant was released from custody in connection with his state arrest, federal law enforcement officials arrested the defendant on a complaint charging him with making a threatening interstate communication in violation of 18 U.S.C. § 875(c). The complaint stemmed from the defendant's continued persecution of a particular individual at NYU, hereinafter referred to as John Doe. See PSR at ¶ 7-11. John Doe and the defendant were in the same class in the fall of 2003, and after the defendant made an abusive comment one day in class, John Doe and others stood up to the defendant. Id. at ¶ 7. Months later, in July of 2007, the defendant cornered John Doe on the NYU campus, spit in John Doe's face, and threatened him with physical violence. Id. at ¶ 9. Days later, the defendant again threatened John Doe. Id. at ¶ 10. Although John Doe sought protection from NYU, he was too fearful to go to the police. Id. Again, months passed without any contact between the defendant and John Doe. Id. at ¶ 11. However, in March of 2005, the defendant placed numerous threatening phone calls to John Doe, causing John Doe to fear for his life and interfering with John Doe's activities at NYU. Id.

After Eng was arrested on the federal charges, he was placed on home detention and electronic monitoring and ordered to continue with his ongoing mental health treatment in connection with his state prosecution. In February 2008, Eng appeared before Magistrate Judge Joan Azrack and pleaded guilty, pursuant to a plea agreement with the government, to a felony information charging him with making a threatening interstate communication in March 2005. See 18 U.S.C. § 875. In a Report and Recommendation dated March 31, 2008, Judge Azrack recommended that the Court not accept the defendant's guilty plea because the defendant's conduct did not violate federal law. In June 2008, the defendant appeared before Your Honor and pleaded guilty, again pursuant to a plea agreement with the government, to a superseding misdemeanor information charging him with interfering with John Doe's education at NYU in 2004. See 18 U.S.C. § 245(b); Superseding Misdemeanor Information. The plea agreement between the parties estimated that, under the United States Sentencing Guidelines, the defendant's total offense level was 8, the defendant was in Criminal History Category I, and therefore the defendant's applicable sentencing range was 0-6 months' incarceration.

C. The Presentence Investigation Report and the Defendant's Objections

In July 2008, the Probation Department issued its PSR in this case. The PSR's calculation of the defendant's total offense level agreed with the calculation in the plea agreement between the parties.[1] However, the PSR calculated the defendant's Criminal History Category to be II after awarding defendant two criminal history points: one point for a local prosecution of the defendant in 2005 that resulted in a conditional discharge that expired in 2006, and one point for the recent local arrest that resulted in the defendant being transferred to a pre-trial diversionary program. See PSR at ¶¶ 29, 32. Based on this calculation, the Probation Department concluded that the defendant's applicable sentencing range was 4-10 months' incarceration.

Based on this calculation, the Probation Department recommended that the defendant receive a sentence of incarceration of 6 months' incarceration to be followed by a one-year term of supervised release. Recommendation at 1. In doing so, the Probation Department noted that the defendant "has a documented history of mental health problems" and "is currently under psychiatric treatment." Id. at 2. The Probation Department's recommendation recognized that the defendant "does not take responsibility for his criminal conduct" and "has continued to commit similar and escalating criminal acts." Id. However, the Probation Department therefore recommended "a custodial sentence," citing the need "for punishment and deterrence . . . since there is a likelihood that the defendant will recidivate." Id. The Probation Department's recommendation contained no provisions to address the defendant's mental health treatment while he was incarcerated.

On July 21, 2008, the defendant filed a letter with the Court requesting that the Court sentence the defendant "to a period of supervision, with terms addressing his treatment needs." In his letter, the defendant objected to the Probation Department's calculation of his Criminal History Category and to its recommendation of a sentence of incarceration. The defendant noted that his instant offense involves a misdemeanor that he committed back in 2004. The defendant further acknowledges that

---

[1] The government notes that the PSR incorrectly references the defendant's guilty plea to the felony information, not to the superseding misdemeanor information, but this error is immaterial. See PSR at ¶ 16.

he suffers from mental health problems and stated that he is progressing in his mental health treatment but that any term of incarceration would prevent him from continuing in that treatment.

## II. Discussion

### A. The Guidelines Calculation in the Plea Agreement is Accurate and the Probation Department's Calculation is Incorrect

The government stands by its estimate of the defendant's sentencing range in the plea agreement and disagrees with the Criminal History Category set forth in the PSR. There is no dispute that the defendant's base offense level is 10 and that the defendant should receive a two-point downward adjustment for acceptance of responsibility pursuant to. See U.S.S.G. §§ 2H1.1(a)(3) & 3E1.1(a). However, as the defendant correctly points out in his letter, the Court should not award the defendant any criminal history points in connection with his most recent prosecution by the local authorities because that prosecution has been transferred to a pre-trial diversionary program. See U.S.S.G. §4A1.2(f) and PSR at ¶ 32. Moreover, the government has been informed that the defendant's prior state prosecutions for aggravated harassment were disposed of via ACDs and also should not result in any criminal history points. See United States v. Morales, 239 F.3d 113, 117-20 (2d Cir. 2000) (interpreting U.S.S.G. § 4A1.2(c)(1) to reject assessment of criminal history point for harassment).

Because the defendant should not receive any criminal history points as a result of his prior state prosecutions, the defendant should be placed in Criminal History Category I.[2] His applicable Guidelines range is therefore 0-6 months' imprisonment. Because the defendant is within Zone A of the sentencing table, a sentence of imprisonment is not required under the advisory Sentencing Guidelines and a sentence of probation is permissible. See U.S.S.G. § 5C1.1(b).

---

[2] The defendant would still be in Criminal History Category I even if the Court elects to assess the defendant one criminal history point based on one of the defendant's prior state prosecutions.

B. A Sentence of Five-Years Probation Is Appropriate In This Case

The government respectfully recommends that the Court sentence the defendant to a five-year term of probation with suitable conditions and reporting requirements that will require mental health treatment and permit the Court to monitor the defendant's progress in that treatment and to protect the public from future misconduct by the defendant. See 18 U.S.C. § 3553(a).

By law and under the Guidelines, the Court is permitted to sentence the defendant to a term of probation of up to five years. See 18 U.S.C. § 3561(c)(2); U.S.S.G. § 5C1.1(b).[3] In this case, a sentence of five years probation would serve two important goals: "rehabilitation [of the offender] and protecting society from future criminal violations." United States v. Knights, 534 U.S. 112, 118 (2001); see Gall v. United States, 128 S. Ct. 586, 595-96 & n.4 (2006) (recognizing the important role for probationary sentences). These two goals are paramount in a case like this involving an individual like the defendant.[4] The defendant suffers from mental health issues and has previously stated a desire and intent to engage in acts of domestic terrorism. He not only celebrated the murder of innocent human beings but also affirmed his own willingness to engage in similar acts. He desperately needs – and the public will best be served by – a five-year sentence of probation that includes court-ordered, long-term, mental health treatment and other special conditions that will prevent the defendant from engaging in future misconduct and from possessing the tools to advance such devastation.

---

[3] Even if the Court does not agree with the parties that the defendant is in Criminal History Category I, a sentence of probation would still be permissible under the Guidelines provided that the Court imposes a sentence of probation that includes a condition that substitutes some type of home or community confinement for the period of incarceration. See U.S.S.G. § 5C1.1(c) & (e). The defendant has been on home detention since his arrest in August 2007. A sentence of probation with a period of home confinement would also serve the sentencing goals of 18 U.S.C. § 3553(a).

[4] The government has also consulted with various members of the NYU community, including the victim in this case, and they similarly support a sentence of probation with monitoring and mental health treatment, not incarceration.

The government respectfully disagrees with the recommendation from the Probation Department and believes that the recommendation lacks a full appreciation for the facts underlying this case. For instance, the recommendation ignores the fact that the defendant has been "punish[ed]" for his most recent conduct: he spent approximately three months in custody at Rikers Island in 2007. In addition, although the recommendation states that the defendant "does not take responsibility for his criminal conduct" (even though the PSR awarded him a downward adjustment for acceptance of responsibility), the defendant has pleaded guilty twice to the criminal conduct underlying this case and is participating in a mental health treatment program related to his misconduct.

Most importantly, the Probation Department's recommendation underestimates the importance of rehabilitation in a case of this nature. Indeed, as the defendant notes, a sentence of incarceration would deprive him of the mental health treatment that he needs, take him away from the treatment that he is presently receiving, and interfere with any progress that the defendant is making in his present treatment. See PSR at ¶¶ 52-54. In this regard, the government is informed by mental health experts who are presently treating the defendant and others who are familiar with the defendant's case that a sentence of incarceration could have profoundly negative consequences on the defendant's treatment and his mental health problems.

Any sentence of incarceration would be short-sighted and counter-productive in this case. If the Court orders any sentence of incarceration, by law the Court can only impose a period of supervised release of up to one year. See 18 U.S.C. § 3583(b)(3). Thus, not only would the defendant be deprived of his ongoing mental health treatment, but the public would be deprived of a greater period of monitoring and protection against future criminal violations by the defendant. In sum, a sentence of incarceration would constitute a short-term fix for a long-term, potentially devastating problem for the community.

IV. Conclusion

Based on the foregoing, the government respectfully requests that the Court sentence the defendant to a five-year term of probation with the following special conditions (in addition to the standard conditions of probation):

- the defendant shall not possess a firearm, ammunition, destructive device, or dangerous weapon, or seek to possess

a firearm, ammunition, destructive device, or dangerous weapon;

- the defendant shall not have contact with the victim of this offense. The defendant also shall not have contact with any other member of the NYU community without their express permission. This means that he shall not attempt to meet in person, communicate by letter, telephone, through a third party, or any other means.

- the defendant shall participate in a mental health treatment program approved by the Probation Department, including any mental health treatment program recommended or required by the local authorities.

- the defendant shall comply with the medication regimen, which may include injectable medication, prescribed by a licensed psychiatrist approved by the Probation Department.

- the defendant shall submit his person, residence, place of business, vehicle, or any other premises under his control (including any computer to which the defendant has access) to a search on the basis that the probation officer has reasonable belief that contraband or evidence of a violation of the conditions of release may be found; the search must also be conducted in a reasonable manner and at a reasonable time; failure to submit to a search may be grounds for revocation; the defendant shall inform any other residents that the premises may be subject to search pursuant to this condition.

Respectfully submitted,

Benton J. Campbell
United States Attorney

Carter H. Burwell

By: ______________________________
Carter H. Burwell
Assistant United States Attorney
(718) 254-6313

cc: Joel Dranove, Esq. (via ECF)