1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - -    X

UNITED STATES OF AMERICA,    :    CR 08-66

                             :


      -against-              :
                                  United States Courthouse
                                  Brooklyn, New York
KENNETH ENG,                 :

                                  July 27, 2011
           Defendant.        :    11:00 o'clock a.m.

- - - - - - - - - - - - -    X

                TRANSCRIPT OF CONFERENCE
                BEFORE THE HONORABLE FREDERIC BLOCK
                UNITED STATES SENIOR JUDGE


APPEARANCES:

For the Government:          LORETTA E. LYNCH
                             United States Attorney
                             BY: PAMELA CHEN
                             Assistant United States Attorney
                             271 Cadman Plaza East
                             Brooklyn, New York


For the Defendant:          JOHN YONG, ESQ.


For US Probation:           GREGORY CARTER


Court Reporter:             Gene Rudolph
                            225 Cadman Plaza East
                            Brooklyn, New York
                            (718) 613-2538

Proceedings recorded by mechanical stenography, transcript
produced by computer-aided transcription.

GR        OCR        CM        CRR        CSR

2

THE CLERK:  Criminal cause for violation of probation, United States of America versus Eng.

I ask the parties if you can state your appearances, please.

MS. CHEN:  Pamela Chen for the government.

Good morning, Your Honor.

MR. YONG:  John Yong for Mr. Kenneth Eng.

MR. CARTER:  Gregory Carter for the US Probation Department.

THE COURT:  Mr. Eng is here.

How is the summer going for you?

THE DEFENDANT:  It is pretty good.

What I want to talk about is I wrote down my complaints against Officer Yelenovic, Carter and Kelly.  I wrote it down on a piece of paper so I don't waste my lawyer's time.

Should I give this to you?

THE COURT:  I will talk to them.  You know my nature is to try to look forward in a positive way rather than to try to go back and deal with past grievances.

THE DEFENDANT:  Truth be told --

THE COURT:  That's my preference.

THE DEFENDANT:  Well, these are more recent things as well.  I think it's important that they are addressed.

GR       OCR       CM       CRR       CSR

3

THE COURT: I will talk to them. I am going to chitchat with them. I will bring it to their attention. I will let them know your feelings. I will have a little chat and let them know.

Is that all right?

THE DEFENDANT: Yes.

THE COURT: How is your job coming?

THE DEFENDANT: It is going very well.

THE COURT: Give me a sense of where you are at with it.

THE DEFENDANT: I don't know what you mean.

THE COURT: I'm sorry. You say it is going well. Are you doing anything that you really enjoy doing on the job?

THE DEFENDANT: Yes, I do. It's not the ideal job but it's a good start.

THE COURT: Great. I am happy to hear that.

Let me hear from Mr. Yong. How are you today?

MR. YONG: I am very well, Judge.

THE COURT: Good.

Is there anything you would like to add? This is just checking in so we can all wish each other a pleasant summer and see how we are all doing and listen to whatever grievances Mr. Eng may have.

MR. YONG: I had an opportunity to read Mr. Carter's report and it's unusual for me to go first.

GR        OCR        CM        CRR        CSR

4

THE COURT:  Excuse me.  Did I get the report since we were last here?

THE CLERK:  Yes.

THE COURT:  I'm sorry.  I just didn't look at it. Bring me up to speed.  My apologies.  Maybe Mr. Carter can tell me.  Go ahead.  I have it back if my office.  I just inadvertently didn't read it.

MR. CARTER:  Primarily, if I can sum it up, there are two issues that I raised in the status report.  One issue is the interactions Mr. Eng is having with Probation, primarily with myself, which has kind of turned adversarial, contentious.

THE COURT:  Apparently that's in this piece of paper, I'm sure.

MR. CARTER:  That piece of paper will probably indicate his account.  The incident that I have mentioned in the report, Mr. Eng notified me of an incident that involved an altercation he had with a woman on the street when he was returning home from his job.

THE COURT:  He told you about that?

MR. CARTER:  He told me about that -- about that job.

THE COURT:  That's good.

MR. CARTER:  He filed a complaint at the police report -- at the police precinct and I was just trying to

GR      OCR      CM      CRR      CSR

5

ascertain his account of what happened.

THE COURT:  All right.

MR. CARTER:  He was very abrupt on the phone.  I instructed him that he needs to come to Probation so that we can sit down and talk about this.  If there are issues that arise, he needs to come down --

THE COURT:  It's one of the reasons we all get together.  Sometimes communication is not effective and we try to use these opportunities to listen to all of that.

It is good that he told you about it.

MR. CARTER:  He did.

THE COURT:  I don't know anything about the specifics.  Maybe Mr. Eng would like to tell me now what happened.

THE DEFENDANT:  What happened, I was walking down the street and a woman was approaching me.  I moved out of the way slightly for her like this.  And I expected her to do the same.  Instead she just rammed into me.  She started cursing at me.  She even shouted my name at one point.  She must have recognized my face.

THE COURT:  How did she know you?

THE DEFENDANT:  Well, I have been on television a few years ago.

In any case, she started cursing at me.  So I cursed back at her.  Then she ran up to me and shoved me from behind.

GR        OCR        CM        CRR        CSR

6

THE COURT:  So you told that to Mr. Carter?

THE DEFENDANT:  Yes.

THE COURT:  That's good.

What happened after that?

What was the problem.

THE DEFENDANT:  I walked away and I reported it to the police department.

THE COURT:  He was just trying to get you to tell him a little bit more about it, I guess.

THE DEFENDANT:  No.  Officer Carter is a -- account of the event is actually wrong.  He did not tell me that I could come into his office during the first phone call.  He just told me that I had to tell him everything over the phone at that exact moment which was impossible because I needed to go to work.

THE COURT:  Maybe he was busy.  Maybe he had other things, he might have been preoccupied.  There was not effective communication.

MR. CARTER:  Yes.  I really wanted to schedule an appointment with him to come so that we could sit down and talk.  He indicated he had to work, that was his priority and coming to Probation was not a priority.

I even gave him several suggestions.  He can see me early in the morning.  His job is not far from my office and if he comes in early, he has plenty of time to come and to

GR      OCR      CM      CRR      CSR

7

report back to his work on time.

He hung up the phone on me.

THE COURT:  All right.

THE DEFENDANT:  No.

THE COURT:  You hear from his perspective what happened.

THE DEFENDANT:  That's actually false too.  I only called him once.  He told me I had to tell him everything at that moment.  He never once mentioned that I had to --

THE COURT:  All right.  What has happened here, what I hear from both of you, is that you haven't had effective communication.  I am hearing two different stories.  We are here today.  Let's see whether we can take a positive view of things.

Do you want to chitchat with Mr. Eng today?  What is your pleasure?

MR. CARTER:  I met with him earlier today before the court appearance.  It is just the fact that he needs to understand, I am trying to work with his schedule but there comes times in which he has to report and he has to comply with the reporting schedule.

THE COURT:  You understand that.  We have to all make a better effort to try to get along with each other, is what it comes down to.  Okay?

THE DEFENDANT:  Yes.

GR      OCR      CM      CRR      CSR

8

MR. YONG:  And Mr. Eng since told me that he's willing and able to come at 7:30 in the morning, at Mr. Carter's choice.

THE COURT:  I don't know whether Mr. Carter is awake at 7:30 in the morning.

MR. CARTER:  Yes, Your Honor.  I am an early riser.

THE COURT:  I am sound asleep.  We'd have a tough time if I were your probation officer.  We'd never be able to get together at 7:30 in the morning.

MR. YONG:  He will make whatever accommodations he can to get to Mr. Carter's office.

THE COURT:  That's why we are here.  That's good to hear.

Miss Chen, is there anything you want to say at all?

MS. CHEN:  Yes.  I did want to sort of give the Court some perspective based on the status report of a trend and one that we just want the Court to know.

As you mentioned, the purpose of these regular meetings is for the Court and for the parties to have a sense of how Mr. Eng is doing generally on the program and monitoring and with --

THE COURT:  There is some good news.  He obviously is sustaining his employment, which is very good.

MS. CHEN:  So it appears, Your Honor.

The concern that we have just based on the report,

GR        OCR        CM        CRR        CSR

and obviously when the Court has an opportunity to read it you may see this yourself, is that there does appear to be a slightly escalating trend of hostility by Mr. Eng toward --

THE COURT: I get a sense of that, yes.

MS. CHEN: -- towards Probation but also to the world at large. This incident, as you will read, involved what is not an unusual circumstance in New York in terms of people jostling one another and, unfortunately, it bears a somewhat eerie resemblance to the incident.

THE COURT: That's why we are here. That's why he is under some supervision.

I am just wondering what the doctors are saying these days. I guess you are continuing to see which doctor these days?

THE DEFENDANT: Doctor Ortega and also a Doctor Lu too, to receive my injections.

THE COURT: You are doing that. How is Doctor Ortega? You are getting on with him okay?

THE DEFENDANT: Yes, I am.

THE COURT: I guess he is helpful. Do you discuss these matters with him?

THE DEFENDANT: I wouldn't say he's helpful. Frankly, I really don't need therapy.

THE COURT: Look, I understand that. But you do realize that you are here for a reason. You do realize that.

GR      OCR      CM      CRR      CSR

10

THE DEFENDANT: Yes.

THE COURT: All right. Doctor Ortega is on board to try to help you get beyond it so we have fewer of these types of things that will bedevil you during the course of your life. Obviously you have a short trigger and that's why you are here. Hopefully Doctor Ortega -- you talk to him about these things openly, I assume. I am not there.

THE DEFENDANT: Yes.

MS. CHEN: Your Honor, the third aspect of Mr. Eng's behavior over the last period is that there has been an increase use by him of the Internet to express and urge others to engage in boycotting based on perceived anti-Asian activities of other individuals, including the President of the United States. He even posted pretty recently that Barack Obama is a racist and therefore something should be done about it and to spread the word.

This is all by way of saying, Your Honor, that it's all part of sort of his status and somewhat of a trend. It forms a certain picture of maybe an increasing sense of hostility.

THE COURT: That's why we are here. It is good to talk about it.

You understand the concerns. Sometimes people put things on the Internet that are harmless or not harmless.

THE DEFENDANT: It is perfectly legal, what I am

GR    OCR    CM    CRR    CSR

doing.  I don't know why Ms. Chen is bringing it up.

THE COURT:  It may be legal.  Still, there is a pattern and history here that, with all due respect, we have to monitor, because of the past history here.  You have to appreciate that.  You may not.  That's why you are here.  You are not here because there is nothing better to do.  I hope you can understand that.

The only way we can handle that is to reach out to the professionals who are treating him.

MS. CHEN:  Exactly right, Your Honor.

I do want to say, the government recognizes that certainly Mr. Eng has free speech rights.

THE COURT:  He is getting help.

MS. CHEN:  Right.

THE COURT:  He is getting his injections and he is continuing his employment.  All that is good.

MS. CHEN:  Right.

THE COURT:  I have to just ask for a report from the doctor.

MS. CHEN:  I think Mr. Carter -- what I was going to say is that, with all of this information, Mr. Carter will speak to Doctor Ortega and obviously apprise him of these various events.

THE COURT:  You are talking to Doctor Ortega about these things.

12

MR. CARTER:  Yes.

This is continuing.  Our concern is the obsessive nature which will be -- we will continue our discussions with Doctor Ortega to try to work it out in therapy.

THE COURT:  Doctor Ortega is very important.

You are not seeing Doctor Keller anymore, are you?

THE DEFENDANT:  No.

THE COURT:  I thought he was pretty good.  You couldn't fit him into your schedule, I guess.

THE DEFENDANT:  I could not.

Your Honor, may I ask a question?

THE COURT:  Yes.

THE DEFENDANT:  I want to know, since what I am doing is not illegal, may I continue going to forums for Asian people so I can encourage boycotts against certain movies?

THE COURT:  You are free to do as you choose. Realistically speaking, we have to keep tabs on your behavior. You may not like it.

THE DEFENDANT:  You can keep tabs on me, as long as I keep on doing what I am doing.

THE COURT:  If we get threats over the Internet or we hear you are angry or hostile towards the president or me or anybody, you have to be mindful of that.  You have to respect and understand, we are trying to help you.  We are not trying to hurt you.

GR      OCR      CM      CRR      CSR

13

THE DEFENDANT:  You can monitor me.  But as long as I get to continue doing what I am doing.  I have not done anything illegal.

THE COURT:  You can continue to do what you are doing and we will see how it goes.  If, for example, you start threatening to kill the President of the United States it will be a concern.

THE DEFENDANT:  No, I would not do that.  I am pretty sure I'd be arrested.

THE COURT:  You can understand that.

THE DEFENDANT:  Yes.

And also I'd like to create another Facebook account so I can continue my, you know, my duties to boycott certain types of films and television shows.  May I do that?

MS. CHEN:  Your Honor, I think there is a concern about the ability of Probation to monitor Facebook accounts.

THE COURT:  Can you monitor those things?

MR. CARTER:  I would have to talk with our -- Officer Kelly who does the actual monitoring.

THE COURT:  If it can be monitored.  We have to monitor it.

THE DEFENDANT:  I already have one Facebook account.

THE COURT:  Work it out.  If it can be monitored, you can use it.  If they can't,  then we will talk about it the next time we get together.

GR        OCR        CM        CRR        CSR

14

We have to take this incrementally, one step at a time.

I want a medical report from Doctor Ortega.  He has all this information.  There is a concern that there may be some anger issues here that established itself.

I will talk to Ms. Kelly, the probation officer.  We will have a chat about that.

I want to hear about Doctor Ortega, how you are doing, given all this information.

THE DEFENDANT:  Just to make -- so I could be clear, am I allowed to register for forums that are not related to work?

THE COURT:  I don't know what that means.

THE DEFENDANT:  I need to register for certain message boards on the Internet that are not related to --

THE COURT:  You can do whatever you want to do.  It will be monitored.  That's the important thing.

THE DEFENDANT:  That's fine.

THE COURT:  Okay.  Just use good common sense.  That's all I am going to ask you to try to do, the best that you can.

THE DEFENDANT:  Okay.

THE COURT:  Do you have any hostility towards me these days?

THE DEFENDANT:  No.

15

THE COURT:  Do you want to say anything else?  I appreciate your coming here.  I know you are in an unusual position here.  I realize that.

Tell me how you are getting along with Mr. Eng.

MR. YONG:  I get along with Mr. Eng fine.  I think that -- I have counseled him, I will share with the Court and everyone else, to maybe perhaps take a different tone.

THE COURT:  I think you are an important person.  He seems to have respect for you and regard for you.  You can just chitchat with him and talk to him like a Dutch uncle.

MR. YONG:  Yes.  I consistently counsel him to take a different tone and see if we can get along and cooperate or at least try to cooperate.

THE COURT:  Okay.  You can talk to Mr. Yong.  Okay.  You are okay, the two of you together?

THE DEFENDANT:  Yes.

THE COURT:  Good.  Just keep chatting with him.

You know what I suggest for you to think about?  If you have an issue, let's say you are angry at me or something like that, talk to Mr. Yong and see whether you can just flesh it out with him and get it off your chest.  I am not a professional psychiatrist.  I am just trying to do this off the top of my head.  It might be helpful to use him since he's available as a sort of a resource or person you can talk to in addition to Doctor Ortega, et cetera.

GR     OCR     CM     CRR     CSR

16

The state charges are still pending?

MR. YONG:  They are, Judge.

They are on trial for next week.  I anticipate that they won't be tried next week because it's August in state court where most of the judges --

THE COURT:  They are not like federal courts?

MR. YONG:  No.

THE COURT:  In the state court, all the marshals get the month of August off.

MR. YONG:  It's similarly like that in state court. I've actually in 30 years of practice never tried a case in August.

THE COURT:  How about if we take the month of August off too.  Unless something comes up that's very important for me to meet with Mr. Eng.

MR. YONG:  It seems to make sense, Judge.

THE COURT:  You can come back in September.  See how things go.  Use Mr. Yong's services.  Let's see if we can continue good news and better news the next time we get together.  Okay?

THE DEFENDANT:  Okay.

THE COURT:  So September, it will have to be I think the second week in September.

Do you have some time there?

THE CLERK:  Yes, Your Honor.

17

How about September the 14, which is a Wednesday, at 11:00 o'clock.

MR. YONG:  I have a couple of cases.

THE CLERK:  September 13, 11:00 o'clock.

THE COURT:  Try to keep up the good work.  Mr. Eng and Mr. Carter, just try to be nice to each other and cooperate with each other.

THE DEFENDANT:  11:00 o'clock?

THE CLERK:  11:00 am, yes.

THE COURT:  Good seeing you all here again.

MS. CHEN:  Thank you, Your Honor.

MR. YONG:  Thank you.

(Matter concludes.)

GR      OCR      CM      CRR      CSR